THE SOUTH CAROLINA TERMINAL CO. v. SOUTH CAROLINA AND GEORGIA RAILROAD CO.

1. EVIDENCE.—Testimony merely introductory may be admitted, even if it is not relevant, if it is also not prejudicial.

2. EVIDENCE—PRACTICE—A NEW TRIAL will not be granted when the Circuit Judge rules out testimony, but afterwards reverses his ruling, and the objector has an opportunity to get it in.

3. IBID.—IBID.—The admission of irrelevant testimony may be cured by testimony to the same point being introduced by both sides, or by the Judge withdrawing such testimony from the consideration of the jury.

4. LANDLORD AND TENANT.—PRESUMPTION.—When one goes into possession of land with the permission of the owner, the relation of landlord and tenant exists, and the law presumes an agreement to pay a reasonable compensation for its use, in absence of an express agreement.

5. IBID.—JURY—LICENSOR AND LICENSEE.—Whether the facts establish the relation of landlord and tenant, or licensor and licensee, is a question for jury, under proper instructions.

6. CHARGE not on facts.

1—52

Before WITHERSPOON, J., Charleston, April, 1897. Affirmed.

Action by The South Carolina Terminal Company *v.* South Carolina and Georgia Railroad Company on the following complaint:

First. That the plaintiff is, and at the times hereinafter mentioned was, a corporation duly organized and existing under the laws of the State aforesaid, with authority to purchase and hold all such real estate and personal property as it may from time to time deem necessary; to own and acquire wharves, piers, docks, basins, warehouses, for or to be used by railroad or water carriers, with the approaches thereto, suitable for the accommodation of railroad tracks, steamships, vessels and boats, and for the convenient loading, unloading, shipping, receiving, storing, and warehousing of all kinds of merchandise and personal property, and with other powers and privileges, as will more fully appear by reference to an act of the legislature entitled "An act to incorporate the South Carolina Terminal Company," approved December 18, 1893, under the terms of which act the plaintiff is organized.

Second. That the defendant is, and at the times hereinafter mentioned was, a corporation duly organized and existing under the laws of the State aforesaid, for the purpose of maintaining and operating a steam railroad in the said State, and as a part of such business was engaged in receiving and transferring freight to and from its terminus in the said city of Charleston to and from the wharves and docks of the plaintiff; and also to and from docks, tracks, wharves, and warehouses belonging to parties other than the plaintiff, and in which plaintiff not only then had and now has no interest, but which are now and then were owned by its rivals and competitors in business.

Third. That the plaintiff, on the 6th day of July, 1894, was, and since then has been, in quiet and peaceable possession of its lands, together with all the tracks, switches,

and sidings, warehouses, wharves, and other structures thereon, situate at the foot of Columbus street, in the city of Charleston, county and State aforesaid, bounded on the north by marsh lands formerly of the estate of Blake, now supposed to belong to the Northeastern Railroad Company, and also in part by Columbus street; on the east by Cooper River; on the west by Bay street and partly by lands of Welling, James M. Eason, Barker, and of Tucker.

Fourth. That the defendant, the South Carolina and Georgia Railroad Company, in conducting its business as aforesaid, has been, with the consent of the plaintiff, since said date, using, with locomotives, engines, and cars, the said tracks, sidings, and switches of the plaintiff laid on said property. That no rate of compensation or trackage charge for such use had, however, been definitely agreed upon on said July 6, 1894, because, as aforesaid, a large part of said use was for the purpose of delivering and receiving goods and merchandise and other freight to and from the plaintiff itself, at its wharves and docks, under arrangements satisfactory to plaintiff.

Fifth. That the plaintiff, however, gave notice to the said defendant, that for its use of the said tracks, switches, and sidings, for the purpose of receiving and transferring freight, to and from the terminus of defendant, in the said city of Charleston, to tracks, wharves, and warehouses, belonging to parties other than the plaintiff, and for the purpose of storing and drilling its said cars and its trains thereon, in connection therewith (which said use, storing, and drilling, not only did not further and aid the business of the plaintiff, but greatly diverted and diminished the same), the plaintiff required and demanded compensation, and that such compensation should be at the rate of fifty cents per car, for each car placed by the said defendant upon or carried by it over the tracks, sidings, and switches of the said plaintiff, or stored or drilled thereon. That the said sum of fifty cents for each car so handled by the defendant, as aforesaid, was, and is, under the circumstances, a fair and reasonable charge.

Sixth. That the said defendant received and accepted said notice, and thereafter continued, with the consent and under the authority of the plaintiff, to use the tracks, sidings, and switches of the said plaintiff, with locomotives, engines, and cars as aforesaid, for business with parties other than the plaintiff, and as the plaintiff is informed and believes, and so alleges, has, since the 6th day of July, A. D. 1894, and up to the 1st day of June, 1896, transported and transferred 30,231 cars over the same, to and from its terminus in the said city of Charleston, to and from tracks, wharves, and warehouses in said city, other than those of the plaintiff.

Seventh. That the said defendant has paid no part of the said compensation or trackage charge, so specified, nor any other compensation whatever, for the use of the said tracks, sidings, and switches of the plaintiff, but refuses to pay it, although the same was, and is, justly due and owing by the defendant to plaintiff, and this plaintiff has demanded the same.

Wherefore the plaintiff demands judgment against the said defendant in the sum of $15,115.51, together with the costs of this action.

The answer of defendant set up as its second defense the following:

First. This defendant alleges on information and belief: That the plaintiff is a corporation created and organized under the laws of the State of South Carolina, and that the defendant is a corporation created and organized under the laws of the same State, and authorized by charter to construct and operate the railroad hereinafter referred to.

Second. Also, on information and belief, alleges: That heretofore, to wit: on and before the 7th day of October, A. D. 1889, the South Carolina Railway Company, a corporation of the said State, and the New York and Charleston Warehouse and Steam Navigation Company, also a corporation of said State, the latter being the owner of large and

valuable wharves and terminal facilities in the city of Charleston, in said State, were connected by roadways and tracks, and operated practically as one business, the latter company affording to the former its proper and necessary water outlet and trade connections.    That a large majority of the stock of the latter company was owned by the said railway company, which controlled its operations and appointed its officers.    That for the promotion of its business under the conditions aforesaid, the said railway company owned and possessed a roadbed, right of way, and track extending from its depots in the city of Charleston, north of Mary street, to and through Mary street, and thence across lands of said New York and Charleston Warehouse and Steam Navigation Company, in the northeastern part of said city, to the wharves of the said last named company, and including the lands described in paragraph three of the amended complaint.    That the said South Carolina Railway Company was authorized by its charter to construct a railroad at the points in the answer mentioned as the places where it was operating and doing business, and was authorized to condemn lands and rights of way for the purposes of constructing and operating its road in said localities under the laws of this State.

Third.  Also, on information and belief, alleges: That on or about the said 7th day of October, 1889, one Frederick W. Bound filed his bill of complaint in equity in the United States Circuit Court for the District of South Carolina against the said South Carolina Railway Company and the said The New York and Charleston Warehouse and Steam Navigation Company and others, for the foreclosure of a certain mortgage, in which cause liens were embraced, claiming, among other things, to cover all the property before mentioned.    In this cause, D. H. Chamberlain was, on or about October 9th, 1889, appointed receiver, and as such took possession of all said property.    That subsequently, on 31st March, 1890, a cross bill was filed in said cause by certain creditors of the said The New York and

Charleston Warehouse and Steam Navigation Company for the foreclosure of a mortgage of the latter for their benefit, the said mortgage conveying a parcel of marsh land in the said city of Charleston, on the west side of Cooper River, containing fifty-six acres, more or less, bounded on the north by marsh land formerly of estate of Blake and also in part by Columbus street, on the east by Cooper River, and on the west partly by Bay street and partly by lands of Welling, of J. M. Eason, of Dignan, of Tucker, and of Barker, being mostly the land known as the Cleland grant, and being the same land described in the amended complaint, and being also same land over which the Mary street extension of the roadbed and track of the said South Carolina Railway Company track ran, as before alleged; and the receiver thereto appointed was continued in possession of said mortgaged premises pending proceedings in said bill. Subsequently, in the year 1894, the premises last aforesaid were sold by order of said Court, and were purchased by Henry P. Talmadge, who conveyed the same to plaintiff on 6th July, 1894, and all the property of the said the South Carolina Railway Company was also subsequently, on

, 1894, sold by order of said Court, such property including all its railways, tracks, rights of way, and rights and property of every kind and description, and the same are now the property of the defendant herein.

Fourth. That during the time the said D. H. Chamberlain was receiver as aforesaid, to wit: prior to       March, 1891, and before the sales before mentioned; and while as such receiver he had possession and control of all the premises and property hereinbefore mentioned of both the said companies, he constructed with the funds of the said South Carolina Railway Company a branch roadbed and track of the length of about 320 feet, and extending from a point on the track of the said railroad within the lines of the land as before described in the mortgage, by The New York and Charleston Warehouse and Steam Navigation Company, in a curved line, to the track of the East Shore Terminal Com-

pany; and that he used, possessed, and operated the same, together with the Mary street extension, as before described, for the uses and purposes of the business of the said South Carolina Railway Company; and the same has been so used, possessed, and employed ever since by the said company and the succeding owners of said railroad, and is now still used and possessed by the defendant.

Fifth.. That by such consent so given to the right of way over the said land, now claimed by plaintiff, the South Carolina Railway Company acquired and the defendant now owns the right of way over the land occupied by said branch track for a space the length of said track and of a width of nine feet, and is also the owner of the track and all other railroad property thereon, and also the right of way over all the tracks used by it as aforesaid, on the land described in the amended complaint. That no objection was ever made to the said use and said right of way over said strip or over any other part of the land described in amended complaint by the owners of the property prior to the aforesaid sale and conveyance to the plaintiff.

The charge, omitting the formal parts, was as follows:

What must the plaintiff prove by the preponderance of the evidence? It alleges that it is the owner of the land on which this railroad was constructed. It must not only satisfy you upon that point, but it must satisfy you that the South Carolina and Georgia Railroad Company ran its cars over that track belonging to the plaintiff, with the consent and permission of the plaintiff, after the plaintiff acquired the property of the navigation company at the foreclosure sale. I have been requested by the defendant, and I so charge you, that if the defendant used that track, and it didn't use it under the permission and consent of the plaintiff, but used it adversely and independently of any such permission and consent, then the plaintiff cannot maintain this action, because this is an action for compensation for services rendered. I have been requested to charge you

by the defendant, and I do so charge you, that if the defendant, the South Carolina and Georgia Railroad Company, in May, 1894, at the time it purchased the South Carolina Railroad, entered upon this property, claiming it as a part of the property it had purchased, and has continued so to use it under an adverse claim of title, the plaintiff could not, by any act on its part, change the relation of the South Carolina and Georgia Railroad Company to the property. This could only be done by a contract assented to by both parties. In the absence of such contract, the South Carolina and Georgia Railroad, if its claim of title is unfounded, is a trespasser, and the plaintiff, in another action, can recover damages for the use of its property without its consent, but cannot recover such damages in this action. That is, if you believe that the defendant at that time entered upon the property, claiming it as a part of the property it had purchased, and has continued so to use it under an adverse claim of title, independent of the plaintiff, the plaintiff could not, by any action on its part, change the relations of the South Carolina and Georgia Railroad Company to the property. It could not, if that adverse relation still continued. Where one goes into the possession of the property of another, and that possession is shown to be an adverse possession, the presumption is, that that possession continues until there has been an abandonment of that adverse possession—that is, there must be a clear abandonment by the party having the adverse possession to change that relation to the property. That presumption can be overcome and rebutted by showing that what was originally an adverse possession can afterwards, by agreement between the parties, be converted into a permissive possession. So, where a man goes into possession of property under a landlord, he cannot dispute the possession of his landlord, until the relation of adverse possession is established. The relation can only be changed by the assent of both parties, and I am asked to charge that, in the absence of such agreement, the railroad company is a trespasser. I have so

charged you—that is, if it went into possession adversely, or if the plaintiff has failed to show that it was a permissive possession on its part. That is the whole ground of the plaintiff's action. That is the starting point, that the defendant used that track with the permission and consent of the plaintiff.

I have been requested to charge you by the plaintiff, and I so charge you, that if you find from the evidence that the plaintiff was in quiet and peaceable possession of the property described in the complaint as its own property, and the defendant used the same, and the tracks and switches thereon, under an agreement that it should pay a reasonable compensation for such use, then the plaintiff is entitled to recover such amount as the jury may consider reasonable and proper for such use of said property. I am further requested by the plaintiff to charge you, "That this agreement may be either express or implied, and the proof of it may be either direct or presumptive, or implied from circumstances evidencing such an agreement. If, therefore, the jury find from the evidence that the defendant has used the tracks and switches of the plaintiff by the permission of the plaintiff, the law will presume a promise to pay a reasonable rent or compensation, even if none had been expressly fixed or agreed to, the amount of such rent or compensation, if none has been expressly agreed on, being a question solely for the jury to determine." Now I charge you on that point, that that is a presumption, and I charge you that that presumption can be removed. Whether it has been in this case is for you to say. The right of railroads to condemn land has been referred to in this proceeding. Where the charter of a railroad authorizes it to condemn rights of way, to take the property of individuals for its highway, the statute provides that it shall proceed in a certain way.

I am requested by the plaintiff to charge the jury that the provisions of the Revised Statutes contained in sections 1743 to 1755, both inclusive, do not purport to confer on any person or corporation the right to take or condemn the

property of a citizen, for the construction of a railway or other structure of a like kind, under the principle of eminent domain. Such right must be conferred independently and by the charter of the company claiming the same. These sections of the Revised Statutes only purport to prescribe the manner in which such right so otherwise conferred may be exercised, and the mode by which the amount of compensation is to be ascertained. I have examined this charter and I do not see any authority conferred in the charter of the South Carolina Railway Company to condemn land for this purpose, and I shall have to charge you these other requests. I refer to the condemning of this piece of railroad in question, the spur track.

Now I have been requested by the plaintiff to charge you with reference to the relations of the receivers to the property. Whenever a Court takes possession of property pending litigation, sometimes the Court lays its hand upon the property to preserve what is called the *status quo*, and puts it in the hands of a receiver. That receiver's authority is limited to the control and direction of the Court. The title to the property is not in the receiver, it is in the owner until it is divested by proceedings in Court. The purpose of appointing a receiver is merely to take charge of the property and preserve it. It is just simply this: Under my view of the law, if the same person is made the receiver for two separate corporations or estates, I do not think that the statute with reference to condemnation can be carried out by the receiver himself. He occupies a dual relation—he represents as much one as he does the other corporation; and it strikes me that this statute intends that the notice should be given between two independent persons, representing independent interests; and in that view of it, I do not think that a receiver representing two corporations could give the consent or accept the notice authorized and required by the statute in condemning a right of way.

In order to simplify as best I can the issues in this case, you must be satisfied that the land on which this track in

controversy was built was the property of the plaintiff in this action; you must be further satisfied that the defendant company used that track running its cars over it, and that it did it at the time knowing and realizing that it was doing it by the permission and consent of the plaintiff company. Then the question will arrise, Has any demand been made? It is alleged that notice was given by the plaintiff to the defendant that it would require compensation at the rate of fifty cents a car. If a tenant in possession of land, and although he may be there permissively as a tenant at will, if he is notified by the landlord that thereafter he, the landlord, will expect or require or demand compensation for the use of the property, then I will not charge you that the landlord can fix the amount of compensation, but I do charge you that from that time, if the party is in possession as tenant with the permission and consent of the owner, from that time the law would imply that he is under obligation to pay a reasonable rent for the property. I charge you that as matter of law.

I have been requested by the defendant to charge you that you must not allow it to enter into your consideration at all as to how much the construction of this spur was to the advantage or detriment of the Terminal Company; because this is an action not for damages but an action for compensation, with the allegation that the track was used by the consent of the plaintiff. If you conclude that the plaintiff is entitled to recover, you must have reference to the testimony, and the plaintiff must offer you testimony that will enable you to come to the conclusion as to the amount of money that should be justly awarded to the plaintiff, if he has shown that he is entitled to anything. If you find that the plaintiff is entitled to compensation— that is, that the use by the defendant was permissive and not adverse—then your verdict should be, we find so many dollars and so many cents for the plaintiff, writing the amount out in words. If, upon the other hand, the plaintiff has failed to show, by the preponderance of the evidence,

that it is the owner of the property, or that the defendant used it with his permission and consent, or if the defendant has shown its use to be adverse to and independent of the plaintiff, then your verdict should be for the defendant.

·I am requested by the plaintiff to charge you that the implied relation between the plaintiff and defendant may be presumed from the conduct of the parties towards each other, and the possession by the defendant with the permission of the plaintiff is, in general, good grounds for the presumption of an agreement to pay rent or other proper compensation. I decline to charge that. I am further requested by the plaintiff to charge you that, if the jury find from the evidence that the original use of the South Carolina Railway Company of this track and switch was by the permission of D. H. Chamberlain, the receiver of the navigation company, then the conveyance of the said South Carolina Railway Company to the defendant and its immediate grantors does not extinguish the right and title of the plaintiff as the grantee of the navigation company to demand compensation for such continued permissive use. I so charge you.

From judgment for plaintiff, defendant appeals.

*Messrs. Jos. W. Barnwell* and *Lord & Burke*, for appellant, cite: *Question as to value of property admissible:* 24 L. R. C. D., 445. *Law will not presume agreement to pay for use of land:* 15 S. C., 157; 29 S. C., 235; 6 S. C., 186; 25 Barb., 54; 7 Bush., 595; 11 Mass., 533; Vaughn, 351; 124 Mass., 123. *Charter of South Carolina Railway Company authorized it to condemn right of way:* 11 Stat., 295; 8 Stat., 409, 355, 380; 19 Stat., 169, 251. *Agreement to pay for use, question for jury:* 2 S. C., 119; 101 N. Y., 500. *The right which defendant had to use track was mere license:* 124 Mass., 125; 14 Pa. St., 286; 71 Cal., 126. *Act of receiver not authorized or confirmed by Court terminates with receivership:* 153 U. S., 554.

*Messrs. Smythe, Lee & Frost,* contra, cite: *Rule as to*

*immaterial errors in rulings and admission of testimony:*
6 S. C., 411; 10 S. C., 25; 14 S. C., 553; 16 S. C., 102, 412;
17 S. C., 72; 26 S. C., 570; 39 S. C., 261; 36 S. C., 368;
35 S. C., 493; 40 S. C., 93. *The use of property with con-
sent of the owner raises a legal presumption to pay for its
use:* 30 Ga., 143; 31 *Ib.*, 583; 30 Vt., 277; 7 J. J. Marsh,
3, 255; 3 Hill, 549; 2 N. & McC., 157; 10 Waits, 381; 48
Pa. St., 435; 2 Johnson, 75; 1 Ed., 283; 35 Me., 200; 3 N.
Y., 662; 14 Mass., 93; .7 Rich., 381. *Possession not that of
licensee:* 7 M. & W., 63; 11 Mass., 536; 13 M. & W., 837; 4
Johnson, 81; 5 B. & C., 221; 124 Mass., 125. *S. C. Ry. Co.
had no authority to condemn this land:* Rev. Stat., 1743–
1755; 33 S. C., 483; 38 S. C., 312; 42 S. C., 434; 19 Stat.,
169, 252; 21 Stat., 874; 3 Rich., 434; 27 S. C., 559. *Con-
veyance to third party terminated the right:* 3 Pet., 43; 3
McLean, 431; 15 Am. Dec., 543; 2 Daly, 298; 6 Rich.,
353; 7 Rich., 354; 1 N. & McC., 374; 1 Johnson, 323; 70
Ala., 52; 8 N. W. R., 6.

March 24, 1898. The opinion of the Court was delivered by

MR. JUSTICE GARY. In order to understand clearly the
questions presented by the exceptions, it will be necessary
to set out the complaint, answer and charge of his Honor,
the presiding Judge, in the report of the case. The jury
rendered a verdict in favor of the plaintiff for $7,557.75.
The Circuit Judge granted a new trial, unless the plaintiff
entered upon the record a remittitur for all of the verdict
in excess of $5,000, which remittitur was duly entered upon
the record.

The defendant appealed upon exceptions, the first of
which is as follows: 1. "That his Honor erred in admitting
the testimony of J. B. Adger, in answer to the question,
'What was the business done by the navigation com-
pany at that time?' referring to 1885, which question
was objected to by defendant; but, on the contrary,
he should have excluded said testimony as irrelevant to any
of the issues in the cause." The "Case" shows the follow-

ing: when J. B. Adger was being examined in behalf of the plaintiff: "Q. What was the business done by the navigation company at that time? Objected to. By the Court: At this stage I will admit the testimony. Excepted to by the defendants. Q. Will you tell me the business the navigation company was engaged in at that time? A. Storing manipulated fertilizers in the warehouses at the upper wharf, and shipping those out on orders of the owners, on the lower wharf, which was the terminal of the New York and Charleston Warehouse and Steam Navigation Company, and the freights from the steamships from the interior were transferred on lighters of the navigation company to the Columbus street wharf and Adger's wharf; that freight was sorted and loaded into cars for transfer, and transferred across the tracks of the navigation company to the South Carolina Railroad." It must be borne in mind that this is an action for compensation, and not for damages. The foregoing testimony was merely introductory, and only tended to show the *nature* of the business of the navigation company. It was the statement of a surrounding circumstance that may have been effectual to some extent in giving rise to the alleged relations between the grantors of the plaintiff and defendant. If the testimony did not have that effect, then it was ineffectual for any other purpose, and even if it was irrelevant, it was not prejudicial to the appellant. This exception is, therefore, overruled.

The second exception is as follows: 2. "That his Honor erred in admitting the testimony of J. B. Adger, in continuation of, and in explanation of, his answer to said question, and showing the business relations of the South Carolina Railway Company and the Navigation Company at that time, but should have excluded the same as irrelevant." Immediately after the witness answered the question mentioned in the first exception, the "Case" shows that the following took place: "Was any of that freight sent over the Coast Line? A. The freight from the steamship was transferred to Adger's wharf, to the other roads; the goods were

principally delivered to the South Carolina Road, but also
to the other roads.  Q. Was that business large?  A. Yes,
very large.  Q. Was it valuable?  A. Yes.  Q. You were
the agents for the whole Navigation Company?  A. Yes.
Q. Who kept the books of the Navigation Company?  A.
They were kept in our office.  Q. Were they kept by the
South Carolina Railway Company?  A. No.  Q. Were the
two organizations managed separately?  A. Yes.  Q. Who
looked after the measure of the prog for the Navigation
Company?  A. We did.  Q. Of what did that consist; what
did you get for your share?  A. We got the wharfage charge
at Adger's wharf, and the transfer charge of the lighters
and over the tracks.  Q. What did you get for that received
direct at Columbus street wharf?  A. The wharfage charge,
which included the wharfage and transfer charge; at first
there was a charge for wharfage and a transfer charge; the
transfer meant the use of the tracks; that transfer charge
was fifteen cents a ton, and ten cents wharfage, making
twenty-five cents a ton for both.  Q. What was the usual
capacity of a loaded car?  A. From ten to twenty-five or
thirty tons now.  Counsel for defendant give notice that all
this testimony was taken subject to their objection." Waiv-
ing the objection to this exception, that it is too general,
and also waiving the objection that the appellant did not
object to the said testimony at the time the several questions
were propounded and answered, but only gave notice at the
close of said testimony that it was taken subject to objection,
this exception, nevertheless, cannot be sustained.  The
testimony was not responsive to any of the issues made by
the pleadings, and the only objection to it was that it was
irrelevant.  If it was not competent, as introductory evi-
dence, for the purpose of showing the inducements that may
have tended to bring about the state of facts that gave rise
to the plaintiff's cause of action, alleged in the complaint,
or as the foundation for showing that the business relations
which then existed between said corporations were after-

wards continued between the grantees of said corporations, then it was harmless, and the exception is overruled.

The third exception is as follows: 3. "That his Honor erred in sustaining the objection of irrelevancy made by plaintiff to the following question by the defendant to said J. B. Adger on cross-examination: 'I would ask you to fix the outside valuation of that piece of track from the end of the Mary street railroad track down to the East Shore Terminal, to the best of your ability;' but his Honor should have allowed the same to be asked, because the value of the track is pertinent and relevant to issues involving the question of amount of compensation for the use of the track." When the witness, C. S. Phelps, for the defense, was on the stand, defendant's attorney asked a similar question. Upon objection being made to the question, his Honor said: "I will reconsider my ruling, and let the defendant offer testimony as to the value of the track, including the lands;" after which ruling the defendant's counsel recalled the witness, R. M. Marshall, and asked him a similar question. The witness, J. B. Adger, was afterwards recalled, and the defendant had the opportunity of again propounding the question which his Honor had ruled was incompetent. Ordinarily, when the Circuit Judge commits an error as to the introduction of testimony, but afterwards corrects his erroneous ruling, this Court will not grant a new trial. A new trial will only be granted in those cases when the appellant has been prejudiced by the erroneous ruling to such an extent that its correction thereafter does not cure its harmful effect. In the case of *Hopt* v. *People*, 7 Sup. Ct. Rep., 614, Mr. Justice Field, in delivering the opinion of the Court, said: "But independently of this consideration as to the admissibility of the evidence, if it was erroneously admitted, its subsequent withdrawal from the case, with the accompanying instruction, cured the error. It is true, in some instances, there may be such strong impressions made upon the minds of a jury, by illegal and improper testimony, that its subsequent withdrawal will not remove the effect

caused by its admission; and in that case, the original objection may prevail on appeal or writ of error. But such instances are exceptional. The trial of a case is not to be suspended, the jury discharged, a new one summoned, and the evidence retaken, when an error, in the admission of testimony, can be corrected by its withdrawal, with proper instructions from the Court to disregard it;" citing a number of authorities. The principle applies with greater force when the testimony was excluded but afterwards admitted. In this case, the Court is satisfied that the appellant was not prejudiced by the first ruling of the presiding Judge, as the testimony was upon a collateral point, and ample opportunity was afterwards afforded the appellant to introduce the testimony to which objection had been made, and it brought out the testimony from other witnesses it recalled, also having the opportunity to ask J. B. Adger the same question, when he was recalled. This exception is overruled.

The fourth exception is as follows: 4. "That his Honor erred in overruling the objection of irrelevancy by the defendant to the following questions propounded by plaintiff to one of his witnesses, Henry P. Talmadge, viz: 1. 'Do you know what the effect of that track was on the revenue of the navigation company?' (Meaning the switch built by Chamberlain, receiver.) 2. 'Was the railroad company benefited by that change?' 3. 'Was the navigation company injured by that change?' 4. 'Have you any idea to what extent the navigation company was injured by the building of the track?' but should have sustained the same, as said questions were irrelevant to any issues in the case." Testimony was brought out both by the plaintiff and the defendant touching the matters referred to in the said exception, to some of which no objection was made. But, independently of this fact, if there was error, it was afterwards cured by the ruling of his Honor, that the plaintiff could not go behind 1894 in establishing its right to claim compensation, when defendant's counsel moved to strike out all the testimony as to the

2—52

traffic arrangements between the old Warehouse and Navigation Company and the South Carolina Railway Company, and by that portion of his Honor's charge in which he says: "I have been requested by the defendant to charge you that you must not allow it to enter into your consideration at all as to how much the construction of this spur was to the advantage or detriment of the terminal company; because this is an action not for damages, but an action for compensation, with the allegation that the track was used by the consent of the plaintiff." This exception is overruled.

The fifth exception is as follows: 5. "That his Honor being requested by plaintiff to charge as follows: 'That this agreement' (that is, an agreement to pay compensation for the use of the property,) 'may be either express or implied, and the proof of it may be either direct or implied from circumstances evidencing such an agreement. If, therefore, the jury find from the evidence that the defendant has used the track and switches of the plaintiff, the law will presume a promise to pay a reasonable rent or compensation, even if none had been expressly fixed or agreed to; the amount of such rent or compensation, if none has been expressly agreed on, being a question solely for the jury to determine,' erred in substantially charging the same by doing so in these words: 'Now, I charge you on that point, that this is a presumption, and I charge you that that presumption can be removed. Whether it has been in this case is for you to say.' But his Honor should have refused the request, because: 1. While the jury may have been at liberty to find, from all the facts and circumstances of the case, that, as a fact, there was an agreement to pay compensation, express or implied, yet that the law made no presumption in the case either for or against the existence of such an agreement. 2. That if the track and switches were used by permission of plaintiff, such permission amounted to a license and not to a lease, and the law raises no presumption on either side as to compensation to be rendered for action under a license." Pleadings

are for the exceedingly important purpose of framing issues that the parties may thus be advised how to shape their testimony upon the trial of the case. We will, therefore, refer to the pleadings to ascertain the issues therein raised as to the character of the possession under which the respective parties claimed and upon which they relied. In the third paragraph of the complaint, the plaintiff makes the following allegations: "That the plaintiff, on the 6th day of July, 1894, was, and since then has been, in quiet and peaceable possession of its lands, together with all the tracks, switches," &c. In the fourth paragraph it is alleged: "That the defendant, the South Carolina and Georgia Railroad Company, in conducting its business as aforesaid, has been, with the consent of the plaintiff, since said date, using with locomotive engines and cars the said track, sidings, and switches of the plaintiff laid on said property." The fifth paragraph alleges that the plaintiff gave notice to the defendant that it required and demanded the compensation therein mentioned for the use of the said tracks, &c. The sixth paragraph alleges: "That the said defendant received and accepted said notice, and thereafter continued, with the consent and under the authority of the plaintiff, to use the tracks, sidings, and switches of the plaintiff with locomotive engines and cars as aforesaid," &c. The answer, in its fourth paragraph, after stating that the spur track of about 320 feet was constructed by D. H. Chamberlain, while he was receiver, with the funds of the South Carolina Railway Company, alleges further, "that he" (Chamberlain) "used, possessed, and operated the same, together with the Mary street extension, as before described, for the uses and purposes of the business of the said South Carolina Railway Company; and the same has been used, possessed, and employed ever since by the said company, and the succeeding owners of said railroad, and is now still used and possessed by the defendant." The fifth paragraph is as follows: "That by such consent so given to the right of way over the said land now claimed by plaintiff, the South Carolina

Railway Company acquired, and the defendant now owns,
the right of way over the land occupied by said branch
track for a space the length of said track and of a width of
nine feet; and is also owner of the track and all other rail-
road property thereon, and also the right of way over all
the tracks used by it as aforesaid on the land described in
the amended complaint. That no objection was ever made
to the said use and said right of way over said strip, or over
any other part of the land described in amended complaint,
by the owners of the property prior to the aforesaid sale
and conveyance to the plaintiff." That part of the charge
set out in this exception must be construed with reference
to the issues made by the pleadings, the testimony, and the
entire charge. The allegations of the complaint that the
plaintiff is the owner of the land therein mentioned, and,
since the 6th of July, 1894, has been in quiet and peaceable
possession thereof, together with all the tracks, switches,
&c.; that the defendant, since said date, has been, with the
consent of the plaintiff, using said tracks, switches, &c.;
that notice was given to the defendant by the plaintiff that
it required and demanded compensation for the use of the
said tracks, switches, &c.; that the said defendant received
and accepted such notice, *and thereafter continued, with
the consent and under the authority of the plaintiff,* to use
the tracks, switches, &c., state, in effect, that there was
such privity of contract between the plaintiff and the de-
fendant as created the relation of landlord and tenant.
Even if the defendant had been a tenant at will or licensee
before the 6th of July, 1894, the notice alleged to have
been given at that time, that compensation was required
and demanded, and the allegation that the defendant there-
after used the said property, *with the consent and under the
authority of the plaintiff,* show that whatever permissive
right the defendant had to use the property without com-
pensation was then revoked. Now, when we turn to the
answer, we do not find a single allegation that the defend-
ant used and occupied the said property by the consent and

under the authority of the plaintiff, which would be neces-
sary to make it a licensee; on the contrary, it is alleged that
the branch roadbed was constructed by D. H. Chamberlain,
receiver, with the funds of the South Carolina Railway
Company; that the same was used and occupied by him for
the business purposes of the South Carolina Railway Com-
pany; that it has been used and possessed since then by the
said company and the succeeding owners of said railroad,
and is now used and possessed by the defendant; that by
consent the South Carolina Railway Company acquired the
right of way over the said land, and that the defendant now
owns the right of way over the said land, and that it is the
owner of the track and all other railroad property thereon.
It will thus be seen that the defendant claimed entirely
under a title adverse to that of the plaintiff. The charge
of the presiding Judge mentioned in this exception, when
considered with reference to the testimony, the allegations
of the complaint as hereinbefore construed, and in connec-
tion with the entire charge, shows that the first ground of
error alleged in the complaint cannot be sustained. If the
relation of landlord and tenant existed between the plaintiff
and the defendant, the law would imply an agreement to
pay a reasonable compensation for the use of the property,
in the absence of an express agreement to that effect. A.
& E. Enc., vol. 12, pages 660 and 661; *Ford* v. *Caldwell*,
3 Hill, 248; *Ryan* v. *Marsh*, 2 N. & McC., 157; A. & E.
Enc., vol. 27, page 908. Throughout his Honor's charge
he left it to the jury to determine the character of the pos-
session of the respective parties.

The second ground of error alleged in this exception can
not be sustained, not only for the foregoing reasons, but
because it calls upon this Court to decide that if the tracks
and switches were used by permission of plaintiff,
such permission amounted to a license and not a
lease, which was purely a question of fact. This
Court has the power to announce the principles of law
touching the question of license or lease, but whether in

any case on the law side of the Court the facts establish the one or the other of said relations, is a matter exclusively for the determination of the jury. This exception is overruled.

The sixth exception is as follows: 6. "That his Honor erred in charging the jury: 'I have examined this charter— that is, the charter of the South Carolina Railway Company— and I do not see any authority conferred in the charter of the South Carolina Railway Company to condemn land for this purpose, and I shall have to charge these other requests. I refer to the condemning of this piece of railroad in question, the spur track;' but that his Honor should have charged that such authority is conferred by said charter." The appellant, in his argument in reply, says: "We are unable to understand the statement of respondent, that we have not printed the testimony of the 'Receiver of both the navigation and the South Carolina Railway Company, taken by commission and introduced in the Court below.' * * * Reference to the case will show that it is printed at length, and occupies no less than eleven pages of the "Case." On one point it is true, that is, as to the right to bind the two corporations without an order, we have abandoned the testimony; but it is important to show that whatever relationship existed between the two corporations, was only the work of the receiver, and ended upon the termination of the receivership, as we contend." The only question raised by this exception is whether there was error on the part of the presiding Judge in charging that the said charter did not confer authority to condemn the said land. The appellant has abandoned the testimony as to the right of the receiver to bind the two corporations without an order of Court, but insists that the testimony in the case is important upon a ground not mentioned in the exception, which cannot be considered. As we construe the language of the appellant's attorney, his intention is to abandon the exception, in so far as it raised the question of authority to condemn the lands. As that is the only question raised by the exception, it is overruled.

The seventh exception is as follows: 7. "That his Honor erred in charging the jury, 'in order to simplify as best I can the issues in this case, you must be satisfied that the land on which this track in controversy was built was the property of the plaintiff in this action.    You must be further satisfied that the defendant company used that track, running its cars over it, and that it did it at the time knowing and realizing that it was doing it by the permission and consent of the plaintiff company.    Then the question will arise, Has any demand been made?    It is alleged that notice was given by the plaintiff to the defendant that it would require compensation at the rate of fifty cents a car.    If a tenant is in possession of land, and although he may be there permissively as a tenant at will, if he is notified by the landlord that thereafter he, the landlord, will expect or require or demand compensation for the use of the property, then I will not charge you that the landlord can fix the amount of compensation; but I do charge you that from that time, if the party is in possession as tenant with permission and consent of the owner, from that time the law would imply that he is under obligation to pay a reasonable rent for the property.    I charge you that as matter of law,' because, 1. The law implies no *obligation under* such circumstances, though the jury may find from the facts an implied *agreement* to pay.    2. His Honor bases his views on, and so gives the jury to understand, that if there was a *permissive use* in this case, there was the relation of landlord and tenant between the parties; whereas the real relation was that of licensor and licensee.    3. His Honor in effect charged the jury that if the land was plaintiff's, and if the use by defendant was permissive, then the question left is, was demand for compensation made?    If it was, and the use continued, the law implied an obligation to pay; whereas he should have charged that then the question was for the jury to say whether under all the circumstances of the case there was an agreement to pay for the

continued use." This exception is disposed by what was said in considering the fifth exception, and is overruled.

· The eighth exception is as follows: 8. "That his Honor erred in charging the jury as follows: 'If the jury find from the evidence that the original use of the South Carolina Railway Company of this track and switch was by the permission of D. H. Chamberlain, the receiver of the Navigation Company, then the conveyance of the South Carolina Railway Company to the defendant and its immediate grantors, does not extinguish the right and title of the plaintiff as the grantees of the Navigation Company to demand compensation for such continued permissive use;' because, 1. It implies that there was a continued permissive use of the property by the defendant, and so an opinion on the facts that the jury alone were empowered to pass upon. 2. If it meant that the original use of the railway company being permissive, the law presumed the same continued permissive use by defendant, then there was error; because, a. The character of the use by defendant was a question of fact solely for the jury. b. As matter of law, any permission to said railway company was revoked by the sale and conveyance of the property of that company, and any use thereafter by defendant could have no permission from a permission given to a prior corporation." The continued permissive use to which his Honor had reference was the use after July, 1894; for he had ruled that the plaintiff could not recover compensation for the use prior to that time. The word "if," in the exception, shows that his Honor did not intend to pass upon any fact therein mentioned, and the first ground mentioned in the exception cannot be sustained. The request to charge simply means that whatever may have been the relations between the grantors of the plaintiff and defendant prior to 1894, it would not have the effect of defeating the plaintiff's right ·to compensation, provided the facts·in 1894 were such as otherwise to entitle it to compensation. The second ground

mentioned in the exception cannot, therefore, be sustained, and the exception is overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.