## KINCHIN EXUM *v.* JOHN BRISTER.

1. LAND LAWS: PATENT UNDER ACT OF 1852, CH. 16, § 15, NEED NOT BE SIGNED BY SECRETARY OF STATE.—It is not necessary that a patent for land, issued under the Act of 15th of March, 1852 (Session Laws, ch. 16, § 15), should be signed by the Secretary of State; it is sufficient if it be signed by the Governor, and sealed with the great seal of the State.

2. BILLS OF EXCEPTIONS: EXCEPTION TO EVIDENCE: CASE IN JUDGMENT.—The bill of exceptions recited, that a witness for the plaintiff stated, "that he was present when a contract was made between the defendant and another, and that the contract was in writing;" defendant then objected to any further evidence of the contract, unless it be produced; the court overruled the objection, and held that testimony might be introduced to prove the execution of the contract, but not its contents. The witness then stated, "that the instrument he saw executed, was a contract signed by E., as agent for the defendant, and was under seal." *Held*, That it did not appear that the testimony of the witness, in relation to the execution of the contract, was objected to, and that its admission was no ground for a new trial.

3. PRINCIPAL AND AGENT: TRESPASS: EVIDENCE TO ESTABLISH AGENCY: CASE IN JUDGMENT.—In an action to recover damages, for a trespass alleged to be committed by the defendant's agent, in cutting plaintiff's trees, proof that the alleged agent executed a contract for the defendant, to furnish cross-ties to a railroad, is admissible in connection with other proof, showing that the timber cut was manufactured into cross-ties, and delivered by defendant's wagons on the road, upon the point, whether the alleged trespass was committed by defendant's agent, and in the course of the business in which he was engaged.

4. SAME: WHEN PRINCIPAL LIABLE FOR TRESPASS OF AGENT.—The master and principal is liable for a trespass committed by his agent and slaves, with his knowledge and approbation, or subsequent sanction.

5. SAME: PROOF OF PRINCIPAL'S KNOWLEDGE OF TRESPASS: CASE IN JUDGMENT.— Proof, that a large number of trees were cut on plaintiff's land, and manu-

factured into cross-ties by the defendant's overseer and slaves, and under the superintendance of his agent, and that they were hauled away by his teams and delivered to a railroad company, with whom the defendant had a contract to furnish cross-ties, and that defendant resided in the same neighborhood in which plaintiff's land was situated, is sufficient to warrant the jury in finding, that the trespass was committed with his knowledge and approbation.

ERROR to the Circuit Court of Yazoo county.   Hon. William Cothran, judge.

John Brister brought an action, in the court below, against K. Exum, to recover the statutory damages of $10 per tree, for certain white oak trees, which he alleged had been cut and carried away from his land by Exum, and converted to the defendant's use.  The defendant pleaded not guilty, and the cause was submitted to a jury, who found a verdict against the defendant for $1180.  Thereupon the defendant moved for a new trial, which was refused, and he tendered his bill of exceptions, and sued out this writ of error.

It appears, from the bill of exceptions, that, on the trial, the plaintiff offered in evidence, to sustain his *title* to the land upon which the trees were cut, a patent issued under the provisions of the Act of the 15th of March, 1852, for the disposal of swamp and overflowed lands.  This patent was signed by the governor, and had attached thereto the great seal of the State, but was not signed by the secretary of state.

The defendant objected to the introduction of the patent in evidence, because it was not signed by the secretary of state.  This objection was overruled, and the patent was read to the jury.

The plaintiff then proved, that one hundred and eighteen white oak trees were cut by the defendant's slaves, and manufactured into cross-ties, and hauled by the defendant's teams, and delivered on the Central Railroad; that the slaves were under the charge of one Hudson, the overseer of defendant, and that E. Exum, a brother of defendant, superintended the delivery of the cross-ties on the road; that E. Exum and defendant resided within about one-half mile of each other, and about two miles from the land of the plaintiff, upon which the trees were cut; that this land did not join the other land of plaintiff, but cornered with the land of defendant; that it was wild and uncultivated, and much nearer the railroad

than the land of defendant, upon which his hands had made cross-ties.

Bacon, for plaintiff, stated, that whilst defendant's slaves were getting cross-ties, he (witness) was present at a conversation between Hudson, the overseer, and E. Exum; that Hudson told E. Exum that he had crossed over the line of defendant's land, and had cut some trees on the plaintiff's land, and that "he had quit, or would quit, as soon as he hewed the timber down;" to which E. Exum replied by telling Hudson to go on, and that he would make it "all right" with the plaintiff.

Julian, for plaintiff, stated, that he was present when a contract was made between the Miss. Cent. R. R. Co. and defendant, for cross-ties; that it was in writing. Defendant's counsel then objected to any further evidence of the contract, unless it was produced; the court overruled the objection, and held that testimony might be introduced, to prove the execution of the contract, but not its contents. The witness then testified, that the instrument he saw executed, was a contract signed by Edward Exum, as agent of K. Exum, the defendant, and that the contract was under seal. Witness further stated, that he had seen defendant once or twice, on horseback, near the point on the railroad where cross-ties were being delivered, but he did not see him attending to the delivery of any cross-ties, or giving any directions about that business; the slaves which did the work served under the immediate control of some one else; and that about 30,000 cross-ties were delivered.

J. H. Scott stated, that he frequently heard, in the neighborhood, that E. Exum was agent for defendant; that E. Exum once collected some money from witness, on a note due to K. Exum, and that he knew of no other acts of E. Exum, as agent for defendant; that he was a near neighbor, and never saw K. Exum do anything about getting cross-ties, but frequently saw E. Exum engaged in that business.

Speight Dixon stated, that all the timber cut on plaintiff's land was manufactured into cross-ties, and hauled to the railroad; that he had frequently seen defendant's teams hauling them.

E. Berry stated, that he was present when E. Exum came to see plaintiff after his return from Texas, about the timber cut on his land, and among other things, E. Exum proposed to pay for the tim-

ber, and to refer it to two neighbors to say what the timber was worth, which plaintiff declined. Witness lives near the parties, and never saw K. Exum paying any attention to getting the cross-ties, or heard him say anything about it.

A son of the plaintiff was then introduced, and he stated, that whilst his father was absent in Texas, E. Exum came to the witness, who was attending to his father's business, and said that he had got cross-ties on plaintiff's land, and wanted to know what to do about it. Witness had no authority to settle the matter, and declined doing anything.

This was all the evidence.

The court, at the instance of the plaintiff, instructed the jury as follows : —

"3d. That if the jury believe, from the evidence, that the defendant was engaged in getting out cross-ties for the Central Road, and that the hands (slaves) of the defendant, either by the direction of himself, or his agent, did cut and carry away certain white oak trees, on the lands of the plaintiff, without first having obtained plaintiff's consent, and that the same were appropriated to defendant's use, then the law is for the plaintiff, and he is entitled to recover," &c.

"4th. If the jury believe, from the evidence, that the defendant was engaged, in the year 1857, in getting out cross-ties for the Central Road, and if they further believe, from the evidence, that Edward Exum was the agent of defendant in superintending the work, and that, whilst so engaged, he cut down, carried away, and appropriated to the defendant's own use, certain white oak trees on the land of plaintiff mentioned in the declaration, without having first obtained plaintiff's consent, then the law is for plaintiff; and he is entitled to ten dollars for each tree thus cut down, carried away, and appropriated, if done with the knowledge of the defendant, or was afterwards ratified by him.

"5th. If the agents of defendant acted within the scope of their authority, then the law presumes knowledge on the part of the defendant."

The defendant then asked the following instructions, which were given :—

"4th. Agency cannot be established by the signature of a party

professing to be agent; nor by rumor, or the belief of witnesses; nor can any agency for cutting timber be established by proof of acts of agency in other matters.

" 6th. That to make a party liable for the statutory penalty, the trespass must be wilful, and not the result of mistake.   So, also, if the acts of the party generally evince entire good faith in the transaction.

" 7th. The burden of proof, as to the knowledge of the defendant of the commission of the trespass, is upon the plaintiff, if the agent acted without the scope of his authority; and it also devolves upon the plaintiff, to prove the agency of E. Exum."

No instructions marked and numbered 1, 2, and 3, for plaintiff, and 1, 2, 3, and 5, for defendant, appear in the record.

*N. G.* and *S. E. Nye,* for plaintiff in error,
Cited 4 Kent, 330–331; Sugden on Powers, 240; 9 Mees. and Welsb. 404; Story on Agency, ch. 12.

*Gibbs* and *Wilkinson,* for defendant in error,
Cited Sugd. on Powers, ch. 6, § 304; 28 Maine R. 463; 2 Barb. S. C. R. 53; 24 Verm. R. 92.

*Davis* and *Hill,* on same side,
Cited *Moody* v. *Childs,* 26 Miss. R. 109; *Barrington* v. *Mississippi Central Railroad,* 32 Miss. R. 372; *Teynham* v. *Tyler,* 19 E. C. L. Rep. 165; Smith's Master and Servant, 130–131; Story on Agency, § 452; Paley on Agency, 294; *McClanahan* v. *Barrow,* 27 Miss. R. 673.

HANDY, J., delivered the opinion of the court.

The defendant in error brought this action, to recover of the plaintiff in error, the penalty provided by the statute, as the value of certain trees, cut by the plaintiff in error, and appropriated to his use, from the land of the defendant in error.

The case comes up upon a bill of exceptions, taken by the plaintiff in error, to the overruling of a motion made by him for a new trial.   The grounds upon which that motion was made, present the questions for our consideration.

The first ground of error insisted upon, is the admission of the patent from the State of Mississippi, to the defendant in error, for the land from which the trees were cut and carried away. This patent was offered in evidence, for the purpose of showing title in the defendant in error, to the *locus in quo.* It was objected to, on the ground that, though it was signed by the governor, with the great seal of the State affixed to it, yet that it was not *signed by the secretary of state;* but the objection was overruled.

The correctness of this ruling depends upon the true meaning of the Act of 15th March, 1852, ch. 16, sec. 15, under which the patent was issued. That act provides that, in cases like the one in which this patent was issued, "the secretary of state shall issue a patent" for the land, "*which patent shall be signed by the governor, and attested by the secretary of state, with the great seal of the State.*"

It will be observed, that while this phraseology positively requires the patent to be *signed* by the governor, it only requires that it shall be *attested* by the secretary of state. But how is it to be attested by him? If the act had been silent as to the mode of his attestation, it might have been a matter of doubt what mode was sufficient, and whether his signature was not intended. But it proceeds to point out the mode of attestation, to wit, "with the great seal of the State." When it is recollected that the secretary is, under our laws, the keeper of the great seal, it is manifest that the mode of attestation was intended to be, by his affixing the great seal, in testimony of the authenticity of the act. No other person had the power to affix the seal, for it was in his keeping; and, therefore, when affixed, it was, *per se,* evidence that the act of affixing was his; thereby, in the most solemn form, adding his attestation to the patent; and that is all that the statute requires.

There is, therefore, no error in the ruling of the court on this point.

Secondly. The plaintiff below introduced one Julian, as a witness, and proceeded to prove by him, that a contract for furnishing cross-ties to the Mississippi Central Railroad, was made between the defendant and that company, which contract was in writing. The defendant thereupon objected to any further evidence of the contract, unless it was produced. The objection was overruled, so far

as to permit the witness to prove the execution of the written contract, but not the contents of the paper. The witness then testified, that it was a contract signed by Edward Exum, as agent for the defendant, and under seal.

It does not appear that the defendant objected to the evidence, to the limited extent to which it was admitted by the court; and, therefore, he would not be permitted to insist upon the objection as a ground for a new trial. If the evidence, as admitted, was illegal, he should have made his objection to it at the time, and have taken his exception then, or at least have reserved his exception.

The evidence must be treated as having gone to the jury unexcepted to; and it was clearly competent, in connection with the other evidence offered in behalf of the plaintiff, to be submitted to the jury, upon the point, whether the grievance complained of was done by the defendant's agent, and in the course of the business in which he was engaged.

Thirdly. It is objected that the court erred in giving certain instructions, asked in behalf of the plaintiff below.

The first of these, is the plaintiff's third instruction, which is, that if the jury believe, from the evidence, that the defendant was engaged in getting out cross-ties for the Central Road, and if they believe that the hands of the defendant, either by direction of the defendant or his agent, did cut down and carry away certain white-oak trees, on the lands of plaintiff, without first having obtained the plaintiff's consent, and that the same were appropriated to the defendant's use, then the plaintiff is entitled to recover, &c. The fourth instruction is to the same effect, with the addition, that the defendant was liable for the wrong, if committed by his agent whilst engaged in the business, if done with the knowledge of the defendant, or afterwards ratified by him; and the fifth instruction states, that if the agent acted within the scope of his authority, the law presumes knowledge on the part of the principal.

Several objections are taken to these instructions. 1st. It is said that they *assume* the facts referred to in them, and especially the fact, that E. Exum was acting as agent for the defendant, in cutting down and appropriating the trees. But that is a mistake of fact, with regard to the instructions. The question of agency

in the matter is stated hypothetically, and is distinctly submitted to the jury. If there had been no evidence whatever, tending in any degree to show, that E. Exum was engaged in the transaction as the agent of the defendant, then the objection might have been sustained, on the ground that there was no evidence applicable to the supposed state of facts. But there is evidence from which the jury might infer the agency. It is shown that the defendant's slaves, under his overseer, were engaged in cutting timber on his own land, under the superintendence of E. Exum, who had made a contract for the defendant, with the railroad, in relation to the timber; that, whilst engaged in that business, the defendant's slaves cut the plaintiff's trees, which were hauled by the defendant's teams, and delivered to the railroad; and that E. Exum acknowledged the wrong, and made some effort to settle the matter with the plaintiff. Upon these facts, the question was properly presented, and the jury were authorized to infer the fact of agency for the defendant, and of appropriation of the timber to his use.

2d. It is insisted that, conceding that E. Exum was acting as the agent of the defendant, in the business of getting timber on the defendant's lands for the railroad, yet the agency did not extend to the trespass committed on the plaintiff's land; and, therefore, that the defendant was not responsible for the wrong. Admitting this to be true, yet the evidence was such as to warrant the jury in concluding, either that the injury was done by the defendant's agent and servants, with the knowledge of the defendant, or that it was subsequently sanctioned by him; and in either of these cases, the defendant was responsible. Story on Agency, § 455.

The evidence shows that the cutting of trees was continued, after the defendant's overseer and agent were apprised that they were upon the plaintiff's lands; that the plaintiff's land, upon which the trees were cut, lay nearer to the railroad than the defendant's land; that the timber was hauled away by the defendant's teams; that a large number of trees were cut and taken away, and appropriated to the use of the defendant. All these things, being done by the defendant's servants, and under the superintendence of his agent, as the evidence tends to show, were sufficient to warrant the jury in believing, that the injury was done with the defendant's knowledge and approbation; and the third instruction, as limited

and qualified by the fifth, is not erroneous. The fourth instruction states that the defendant was responsible, if the trespass was committed by his agent, with the knowledge of the defendant, or he subsequently ratified it; and is not objectionable.

Upon the whole, we think that the verdict is sustained by the evidence; and the judgment is affirmed.