## PATRICK DEMPSEY *vs.* JAMES CHAMBERS.

Essex.   November 8, 1890. — September 3, 1891.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Master and Servant — Ratification — Liability for Servant's Torts.*

If one not in the employ of a coal dealer undertakes to deliver coal to a customer
as the servant of the dealer and for his benefit, and in so doing negligently
damages the customer's building, the dealer, by subsequently ratifying such
delivery by him, establishes the relation of master and servant between them
from the beginning, and is liable for the negligent act as if he had employed
such servant beforehand.

TORT. Trial in the Superior Court, before *Thompson*, J., who
allowed the following bill of exceptions:

" This was an action to recover for an injury to the plaintiff's
building, the injury consisting in the breaking of a light of plate
glass in the front of said building. The plaintiff claimed that
the glass was broken by the carelessness of the defendant's ser-
vant. It appeared at the trial, that the glass was broken by one
McCullock, while he was engaged in delivering a load of coal to
the plaintiff, which had been ordered by the plaintiff of the de-
fendant, who was a dealer in coal. The defendant claimed, and
offered evidence tending to show, that at the time of the delivery
of the coal McCullock was not his servant or in his employ, and
undertook to deliver the coal without his direction or knowledge.
It appeared that McCullock was a member of the defendant's
household, accustomed to be in and about the defendant's coal-
yard, and that he took the coal from the defendant's yard and
on one of the defendant's wagons. It also appeared at the
trial, that, subsequent to the delivery of the coal and with a
full knowledge of the accident and of the delivery of the coal
by McCullock, the defendant presented a bill for the coal to the
plaintiff, and claimed that the plaintiff owed him for the same.
The court found as a fact that the glass was broken by the care-
lessness of McCullock in delivering the coal, and that at the
time of the delivery of the coal McCullock was not in fact the
agent or servant of the defendant, or in his employ, but found

that the delivery of the coal by McCullock was ratified by the defendant, and that such ratification made McCullock in law the agent and servant of the defendant in the delivery of the coal. And the court ruled that the defendant, by his ratification of the delivery of the coal by McCullock, became responsible for his negligence in the delivery of the coal. To this ruling the defendant excepted, and now excepts, and prays that his exceptions may be allowed.

"The case was tried by the court without a jury, and the finding of the court was for the plaintiff."

The case was submitted on briefs in November, 1890, and afterwards, in September, 1891, was submitted on the same briefs to all the judges except *Field*, C. J.

*W. S. Knox*, for the defendant.

*J. P. Sweeney & H. R. Dow*, for the plaintiff.

HOLMES, J. This is an action of tort to recover damages for the breaking of a plate-glass window. The glass was broken by the negligence of one McCullock, while delivering some coal which had been ordered of the defendant by the plaintiff. It is found as a fact that McCullock was not the defendant's servant when he broke the window, but that the "delivery of the coal by McCullock was ratified by the defendant, and that such ratification made McCullock in law the agent and servant of the defendant in the delivery of the coal." On this finding the court ruled "that the defendant, by his ratification of the delivery of the coal by McCullock became responsible for his negligence in the delivery of the coal." The defendant excepted to this ruling, and to nothing else. We must assume that the finding was warranted by the evidence, a majority of the court being of opinion that the bill of exceptions does not purport to set forth all the evidence on which the finding was made. Therefore, the only question before us is as to the correctness of the ruling just stated.

If we were contriving a new code to-day, we might hesitate to say that a man could make himself a party to a bare tort, in any case, merely by assenting to it after it had been committed. But we are not at liberty to refuse to carry out to its consequences any principle which we believe to have been part of the common law, simply because the grounds of policy on which it

must be justified seem to us to be hard to find, and probably to have belonged to a different state of society.

It is hard to explain why a master is liable to the extent that he is for the negligent acts of one who at the time really is his servant, acting within the general scope of his employment. Probably master and servant are "fained to be all one person" by a fiction which is an echo of the *patria potestas* and of the English frankpledge. *Byington* v. *Simpson*, 134 Mass. 169, 170. Fitz. Abr. Corone, pl. 428. Possibly the doctrine of ratification is another aspect of the same tradition. The requirement that the act should be done in the name of the ratifying party looks that way. *New England Dredging Co.* v. *Rockport Granite Co.* 149 Mass. 381, 382. *Fuller & Trimwell's case*, 2 Leon. 215, 216. Sext. Dec. 5. 12, De Reg. Jur., Reg. 9. D. 43. 26. 13. D. 43. 16. 1, § 14, gloss. See also cases next cited.

The earliest instances of liability by way of ratification in the English law, so far as we have noticed, were where a man retained property acquired through the wrongful act of another. Y. B. 30 Ed. I. 128 (Rolls ed.). 38 Lib. Ass. 223, pl. 9 ; *S. C.* 38 Ed. III. 18, Engettement de Garde. See Plowd. 8 *ad fin.*, 27, 31 ; Bract. fol. 158 b, 159 a, 171 b ; 12 Ed. IV. 9, pl. 23. But in these cases the defendant's assent was treated as relating back to the original act, and at an early date the doctrine of relation was carried so far as to hold that, where a trespass would have been justified if it had been done by the authority by which it purported to have been done, a subsequent ratification might justify it also. Y. B. 7 Hen. IV. 34, pl. 1. This decision is qualified in Fitz. Abr. Bayllye, pl. 4, and doubted in Bro. Abr. Trespass, pl. 86 ; but it has been followed or approved so continuously, and in so many later cases, that it would be hard to deny that the common law was as there stated by Chief Justice Gascoigne. Godbolt, 109, 110, pl. 129 ; *S. C.* 2 Leon. 196, pl. 246. *Hull* v. *Pickersgill*, 1 Brod. & Bing. 282. *Muskett* v. *Drummond*, 10 B. & C. 153, 157. *Buron* v. *Denman*, 2 Exch. 167, 188. *Secretary of State in Council of India* v. *Kamachee Boye Sahaba*, 13 Moore, P. C. 22, 86. *Cheetham* v. *Mayor of Manchester*, L. R. 10 C. P. 249. *Wiggins* v. *United States*, 3 Ct. of Cl. 412.

If we assume that an alleged principal by adopting an act which was unlawful when done can make it lawful, it follows

that he adopts it at his peril, and is liable if it should turn out that his previous command would not have justified the act. It never has been doubted that a man's subsequent agreement to a trespass done in his name and for his benefit amounts to a command so far as to make him answerable. The *ratihabitio mandato comparatur* of the Roman lawyers and the earlier cases (D. 46. 3. 12, § 4; D. 43. 16. 1, § 14; Y. B. 30 Ed. I. 128) has been changed to the dogma *æquiparatur* ever since the days of Lord Coke. 4 Inst. 317. See Bro. Abr. Trespass, pl. 113 ; Co. Lit. 207 a; Wingate's Maxims, 124; Com. Dig. Trespass, C, 1 ; *Eastern Counties Railway* v. *Broom,* 6 Exch. 314, 326, 327 ; and cases hereafter cited.

Doubts have been expressed, which we need not consider, whether this doctrine applied to the case of a bare personal tort. *Adams* v. *Freeman,* 9 Johns. 117, 118. Anderson and Warberton, JJ., in *Bishop* v. *Montague,* Cro. Eliz. 824. If a man assaulted another in the street out of his own head, it would seem rather strong to say that, if he merely called himself my servant, and I afterwards assented, without more, our mere words would make me a party to the assault, although in such cases the canon law excommunicated the principal if the assault was upon a clerk. Sext. Dec. 5. 11. 23. Perhaps the application of the doctrine would be avoided on the ground that the facts did not show an act done for the defendant's benefit. *Wilson* v. *Barker,* 1 Nev. & Man. 409 ; *S. C.* 4 B. & Ad. 614, *et seq. Smith* v. *Lozo,* 42 Mich. 6. As in other cases it has been on the ground that they did not amount to such a ratification as was necessary. *Tucker* v. *Jerris,* 75 Maine, 184. *Hyde* v. *Cooper,* 26 Vt. 552.

But the language generally used by judges and text writers, and such decisions as we have been able to find, is broad enough to cover a case like the present when the ratification is established. *Perley* v. *Georgetown,* 7 Gray, 464. *Bishop* v. *Montague,* Cro. Eliz. 824. *Sanderson* v. *Baker,* 2 Bl. 832 ; *S. C.* 3 Wils. 309. *Barker* v. *Braham,* 2 Bl. 866, 868 ; *S. C.* 3 Wils. 368. ` Badkin` v. *Powell,* Cowper, 476, 479. *Wilson* v. *Tumman,* 6 Man. & G. 236, 242. *Lewis* v. *Read,* 13 M. & W. 834. *Buron* v. *Denman,* 2 Exch. 167, 188. *Bird* v. *Brown,* 4 Exch. 786, 799. *Eastern Counties Railway* v. *Broom,* 6 Exch. 314, 326, 327. *Roe* v. *Birkenhead, Lancashire, & Cheshire Junction Railway,* 7 Exch. 36, 41. *Ancona*

v. *Marks*, 7 H. & N. 686, 695.   *Condit* v. *Baldwin*, 21 N. Y. 219, 225.   *Exum* v. *Brister*, 35 Miss. 391.   *Galveston, Harrisburg, & San Antonio Railway* v. *Donahoe*, 56 Texas, 162.   *Murray* v. *Lovejoy*, 2 Cliff. 191, 195; see *Lovejoy* v. *Murray*, 3 Wall. 1, 9 ; Story on Agency, §§ 455, 456.

The question remains whether the ratification is established. As we understand the bill of exceptions, McCullock took on himself to deliver the defendant's coal for his benefit and as his servant, and the defendant afterwards assented to McCullock's assumption.   The ratification was not directed specifically to McCullock's trespass, and that act was not for the defendant's benefit if taken by itself, but it was so connected with McCullock's employment that the defendant would have been liable as master if McCullock really had been his servant when delivering the coal.   We have found hardly anything in the books dealing with the precise case, but we are of opinion that consistency with the whole course of authority requires us to hold that the defendant's ratification of the employment established the relation of master and servant from the beginning, with all its incidents, including the anomalous liability for his negligent acts. See *Coomes* v. *Houghton*, 102 Mass. 211, 213, 214; Cooley, Torts, 128, 129.   The ratification goes to the relation, and establishes it *ab initio*.   The relation existing, the master is answerable for torts which he has not ratified specifically, just as he is for those which he has not commanded, and as he may be for those which he has expressly forbidden.   In *Gibson's case*, Lane, 90, it was agreed that, if strangers as servants to Gibson, but without his precedent appointment, had seized goods by color of his office and afterwards had misused the goods, and Gibson ratified the seizure, he thereby became a trespasser *ab initio*, although not privy to the misusing which made him so.   And this proposition is stated as law in Com. Dig. Trespass, C, 1.   *Elder* v. *Bemis*, 2 Met. 599, 605.   In *Coomes* v. *Houghton*, 102 Mass. 211, the alleged servant did not profess to act as servant to the defendant, and the decision was that a subsequent payment for his work by the defendant would not make him one.   For these reasons, in the opinion of a majority of the court, the exceptions must be overruled.

*Exceptions overruled.*