8362

ABBOTT v. SUMTER LUMBER CO.

1. Damages—Trees.—The commercial value is not the true value of trees growing in the original state and preserved for use, ornament or beauty. .

2. Principal and Agent.—One cutting and loading timber for the owner at so much per thousand feet is not an independent contractor but a servant. Where one person accepts and uses the results of acts of another, such acts on his part imply a ratification of the acts of the other.

*The* Chief Justice *and* Mr. Justice Woods *think this an issue for jury.*

Before Copes, J., Sumter, November, 1911. Affirmed.

Action by S. R. Abbott against Sumter Lumber Co. Defendant appeals.

*Messrs. Lee & Moise,* for appellant, cite: *Measure of damage for cutting timber:* 61 S. C. 313; 69 S. C. 367. *For cutting by mistake punitive damages should not be awarded:* 13 Cyc. 109, 111. *Independent contractor:* 16 Ency. 187, 192, 191; 65 L. R. A. 445; 30 At. 346; 73 S. C. 212.

*Mr. L. D. Jennings,* contra, cites: *Value of trees:* 61 S. C. 313. *Independent contractor:* 16 Ency. 204; 26 Cyc. 1562, 1565.

November 4, 1912. The first opinion was delivered by

Mr. Chief Justice Gary. This is an action for damages.

The allegations of the complaint material to the questions involved, are as follows: "That before the death of Dr. H. T. Abbott, the husband of the plaintiff, who was then the owner of said land, the defendant went upon a portion of said tract of land, without any right whatsoever, to do so, and did cut and remove a portion of the pine timber

therefrom. That the said Dr. H. T. Abbott stopped the defendant from cutting the timber on his said land, and the defendant was notified not to enter upon said land, and cut and remove any more of said timber, other than that which had been sold to it, by the said Dr. H. T. Abbott. That the said Dr. H. T. Abbott has since departed this life, and the plaintiff is now the owner of said tract of land. That notwithstanding said notice to the defendant, not to enter upon said tract of land, and cut and remove the timber herein sued for, the defendant, its agents and servants, without any authority from the plaintiff, and without any right to said timber, and after notice not to enter upon said land, in wilful violation of the plaintiff's rights, went upon said tract of land, and did wilfully and unlawfully cut down and remove and destroy sixty-five pine trees, the property of the plaintiff, to the damage of the plaintiff in the sum of *five hundred dollars*."

The defendant denied the allegations of the complaint, and alleged that the timber was cut by T. T. Stack, an independent contractor, for whose acts the defendant was in nowise responsible.

The jury rendered a verdict in favor of the plaintiff for one hundred dollars actual damages, and two hundred dollars punitive damages, and the defendant appealed.

The first question for consideration is, whether there was error, on the part of his Honor, the presiding Judge, in not ruling, that plaintiff, in proving her actual damages, was restricted to the commercial value of the timber.

When the only damages to real property, arise from the loss of the commercial value of the trees as timber, then the rule for which the appellant contends would, perhaps, be applicable.

But when the commercial value of the trees would not adequately compensate the plaintiff, for the actual loss sustained, then the rule does not apply. For instance, sup-

pose the defendant had cut down the shade trees, in the plaintiff's yard, it could not escape liability by paying such an amount, as represented the commercial value of the trees. The plaintiff thus testified, without objection to such testimony: "You say that this body of timber, that these trees were cut out, were near your house and especially valuable; why were they especially valuable; why any better than any other timber? Because the doctor prized that; that had been there all his life, and he reserved it for his own private use." It will thus be seen, that the commercial value of the timber, would not have been adequate compensation in this case.

The next question is, whether there was any testimony tending to show, that the plaintiff was entitled to punitive damages.

The exceptions raising this question are overruled, for the reason that there was testimony, tending to sustain the allegations of the complaint.

The last question raised by the exceptions is, whether his Honor, the presiding Judge, erred in withdrawing from the consideration of the jury, the following defense interposed by the defendants:

First. "This defendant further answering the complaint alleges, that sometime since, this defendant entered into a contract with one T. T. Stack, for the purpose of logging certain timber owned by this defendant, in the county of Sumter, in said State, and this defendant alleges, that it is informed and believes, that the timber sued for, or a part of the same, was cut by the said T. T. Stack.

Second. "That the contract with the said T. T. Stack and this defendant, was that said T. T. Stack, for a certain consideration, was to cut and log certain timber owned by this defendant, and being other timber than that described in the complaint, and that the said T. T. Stack, was not the agent or servant of this defendant, but an independent contractor, and if the said T. T. Stack did cut the timber of the plain-

tiff, that it was done without authority from this defendant, and this defendant has received no benefit therefrom, and is in no way responsible therefor.

Third. "That this defendant gave the said T. T. Stack, full and ample instructions, as to the timber owned by this defendant, and the timber that the said T. T. Stack was to cut for this defendant, was owned by this defendant, and this defendant is in noway responsible, if the said T. T. Stack cut the timber of the plaintiff.

Fourth. "That the said T. T. Stack has no authority from this defendant, to cut the timber of the plaintiff, and if he did cut the said timber, that was cut for his own use and benefit, and without authority from this defendant, and this defendant is not liable for said act, for the cutting of said timber."

A. A. Howell, a witness for the defendant, testified as follows: "Do you know the contract, had between the Sumter Lumber Company and Mr. T. T. Stack, for the cutting of this timber? Yes, sir; I do. What was that contract? Mr. Jennings: I object to the contract, between Mr. Stack and the Sumter Lumber Company. I don't care anything about that. If they sent a man to cut timber, and he cut our timber—

"Mr. Moise: We set up the defense of independent contractor.

"Mr. Jennings: That would be hearsay as to this lady. They can't set up the contract between them and Mr. Stack. The question is, did the Sumter Lumber Company cut this timber? If they did they are liable.

"Mr. Moise: We contend that Mr. Stack was an independent contractor; that he had a contract to go there and cut the timber, for a certain amount, and if he cut the timber, we are not liable. He was an independent contractor, and merely had a contract to go there and cut the timber for so much a thousand, and deliver on cars and ship to us, and that is one of our defenses.

"Court: Mr. Moise, I think it is responsive to your answer. * * *What was that contract between the Sumter Company and Mr. Stack? Stating for a price they would pay him to log the timber, and he to furnish the team and cut it, and put on board the cars. Put it on board the cars at Oswego? Yes, sir. How much a thousand to pay for that? Six dollars. Was he to cut it and skid it, and do whatever was necessary to get it out? Yes, sir. Did the Sumter Lumber Company have anything to do with the cutting? Nothing whatever. Was Mr. Stack the agent or employed servant of the Sumter Lumber Company?' He was an independent contractor. Has he ever worked for the Sumter Lumber Company as agent or servant or employee? No, sir; only in one case. Sir? Only in one case, and that was a different proposition. What was that? The moving of a boiler. That had nothing to do with the cutting of timber? That had nothing to do with this. So he was an independent contractor at the time he cut this timber? Yes, sir. He was not the agent of the company? No, sir."

His Honor, the presiding Judge, thus instructed the jury, in withdrawing the aforesaid defense from their consideration:

"As an affirmative defense, the defendant sets up, that the act of cutting these trees, was done by an independent contractor, and that by reason of having been so done, that the defendant is not liable. If that is a good defense in the law, then it would be the duty of the defendant, to prove every material allegation contained in that defense, by the preponderance of the testimony. As it is shown, that all the rights of the defendant in regard to these trees, accrued under the contract, I don't think that that defense can apply in this case; hence, you will not consider it. The case cited here, known as Rogers v. The Railroad Co., the rights of the railroad in that case, did not accrue under any contract. In this case the rights of the defendant, whatever they are,

accrued under a contract, and that contract is in evidence; hence, as I view the law, the defendant cannot escape any of his obligations under that contract, by setting up that any violation of it, or that in removing the timber in any way,— these acts were done by an independent contractor."

In the case of *Conlin* v. *Charleston*, 15 Rich. 201, the Court uses the following language (which was quoted with approval in *Banks* v. *Express Co.*, 73 S. C. 211, 53 S. E. 166) : "A master is liable for the negligence of his servant engaged in his business, because he selects his servant and controls him. He should not be answerable for acts done by the servant of another, or by that other who is not subject to his control. Therefore, the owner of property fixed or movable, for whose benefit a work about such property is accomplished, is not held answerable for the negligence of an independent contractor, to whom he has committed the work, to be done without his control in its progress."

If the trees were felled by an independent contractor, the defendant was not responsible for such wrong.

It was for the jury and not for the Circuit Judge to determine, whether T. T. Stack was an agent of the defendant or an independent contractor, and if his ruling should be sustained, it would abrogate the doctrine, that a third party is not responsible for the wrongful acts of an independent contractor.

The exceptions raising this question should be sustained.

MR. JUSTICE WOODS.  I agree with the Chief Justice that there was evidence to go to the jury on the question whether the trespass of cutting trees on the lands of the plaintiff was not done by an independent contractor. Plaintiff's husband, Dr. Abbott, conveyed to H. J. McLaurin and his heirs and assigns the timber on certain lands described in the deed, and McLaurin assigned his rights under the contract to the defendant. There was evidence to the effect that the defendant contracted orally with one

Stack that he should cut the timber and load it on the cars at six dollars for every thousand feet, that the defendant had no control over his work.   If this testimony was true, then Stack was an independent contractor.   "A master is liable for the negligence of his servant engaged in his business, because he selects his servant and controls him.   He should not be answerable for acts done by the servant of another, or by that other who is not subject to his control. Therefore, the owner of property fixed or movable, for whose benefit a work about such property is accomplished, is not held answerable for the negligence of an independent contractor, to whom he has committed the work, to be done without his control in its progress."   *Colin* v. *Charleston,* 15 Rich. 201; *Rogers* v. *Florence R. R. Co.,* 31 S. C. 378, 9 S. E. 1059; *Banks* v. *Express Co.,* 73 S. C. 211, 53 S. E. 166.   The numerous authorities in other jurisdictions are cited in 26 Cyc. 1546 *et seq.*   There is nothing whatever in the conveyance from Dr. Abbott to McLaurin that prohibits the grantee from allowing an independent contractor to cut the timber; on the contrary, the right is expressly given to transfer the right to enter and cut.   It follows that if Stack was an independent contractor, the defendant would not be liable for his independent trespass.

There can be no doubt, however, that if the defendant participated in the trespass, it would be jointly liable with Stack.   The evidence is by no means conclusive that it did participate in it by accepting the benefits of it after knowledge that it had been committed.   The evidence on this subject was that Watson, the manager of the defendant company, told Mr. Epps that when he went to the place he found that the trees had been already cut.   The testimony left an important question for the jury whether the defendant had received and used the timber after notice of the trespass or before.   For if it was received even from an independent contractor and converted with knowledge that it had been obtained by a trespass on plaintiff's lands, then I agree with

Mr. Justice Hydrick that the defendant would be a participant in the trespass and liable for actual or both actual and punitive damages according to the circumstances.   But if the defendant received it from an independent contractor, supposing that it was part of the timber conveyed by Dr. Abbott, the defendant would not be a participant in the trespass and would not be liable as a trespasser for either punitive or actual damages.

But even if Stack was an independent contractor and the defendant did not participate in the trespass, the defendant, under the facts here appearing, would, nevertheless, be liable for the value of the timber as property of the plaintiff of which it has had the benefit.   According to the undisputed proof, the defendant received plaintiff's trees from Stack as if they had been a part of the lot of timber which it acquired under the conveyance from Dr. Abbott.   Defendant was to pay Stack six dollars a thousand for cutting and loading on the cars.   Thus the timber on the cars received by the defendant from Stack represented in its hands the six dollars paid Stack for cutting plus the value of the trees before they were cut.   To the extent of the value of the standing trees, therefore, however innocent the defendant may have been, it was enriched by the property of plaintiff delivered to it by Stack, and to the extent of that enrichment the law imputes to it, as an implied contract, the obligation to pay the plaintiff.   *Ford* v. *Caldwell,* 3 Hill 248; *Ryan* v. *Marsh,* 2 N. & McC. 156; *S. C. Terminal Co.* v. *S. C. R. R. Co.,* 52 S. C. 1, 29 S. E. 482; *Kean* v. *Landrum,* 72 S. C. 556, 52 S. E. 421; *Luther* v. *Wheeler,* 73 S. C. 83, 52 S. E. 874, 4 L. R. A. (N. S.) 746n; 35 Cyc. 60; 9 Cyc. 243.   It follows that even if the defendant had nothing to do with the trespass, the plaintiff would be entitled to hold her verdict to the extent of the hundred dollars, the actual value of the standing timber found by the jury.   But if Stack was an independent contractor the defendant was not a participant in the trespass and would not be liable for punitive

damages. On these last issues involving the practical question of punitive damages the error of the Circuit Judge in charging that the doctrine of independent contractor had no application was prejudicial, and I think there should be a new trial.

MR. JUSTICE WATTS. This was an action by the plaintiff against the defendant for damages, actual and punitive, alleging unlawful trespass upon the lands of plaintiff by defendant, its agents and servants, by cutting and removing timber without authority after notice and in wilful violation of plaintiff's rights. The defendant, by answer, denied this, and alleged the timber was cut by T. T. Stack, an independent contractor, for whose acts the defendant was in nowise responsible.

The case was tried before Judge Copes and a jury, in November, 1911, and resulted in a verdict for the plaintiff for one hundred dollars actual damages and two hundred dollars punitive damages. It was shown on the trial that Dr. Abbott, who was the husband of the plaintiff (and who is now dead, and plaintiff claims under him), conveyed certain pine timber upon two tracts of land which plaintiff alleges is the land trespassed on, reserving, however, certain timber on certain portions of the land, describing the portions reserved. The reserved portions lay near the farm house of Dr. Abbott and was reserved by him to use for certain purposes. The conveyance by Abbott to McLaurin gave McLaurin, his heirs and assigns, the right to enter upon the lands, cut and remove timber so conveyed, construct roadways, etc., for that purpose. McLaurin purchased this timber for the defendant, and later on conveyed to them. After this conveyance from McLaurin to defendant, Jackson, who was connected with the defendant company, cut and removed some of the timber reserved by Dr. Abbott. This timber was paid for before Dr. Abbott's death. Later on, after Abbott's death and when plaintiff came into posses-

sion of the lands, Stack entered the lands under a contract with defendant company for the purpose of removing the timber owned by the defendant company, and instead of cutting that alone he cut some of the timber specifically reserved by Dr. Abbott, sixty-three feet long and short-leaf pines. After verdict was rendered for plaintiff, the defendant appealed, and the first question for consideration is whether his Honor erred in not ruling that the plaintiff, in proving her actual damages, was not restricted to the commercial value of timber. We think he committed no error, and that the proposition is almost too absurd to be treated seriously. To say that a person can enter upon the lands of another and cut down his shade trees and trees planted, selected, cultivated and grown or left there growing in the original state for certain purposes of use, ornament, or beauty and when he destroys them escape by paying what the commercial value to a lumber dealer at the nearest market is, is untenable. In the destruction of the shade trees, irreparable wrong might be done, the growth of a thousand years is ruthlessly destroyed, and the owner can never expect, during his lifetime, to see them restored and take his ease and peace under his own shade trees. The law on this is elementary, and holding to the contrary the contention of the defendant and can be found in the textbooks.

By reference to the testimony of Mrs. Abbott, it will be seen that there was a greater value to the trees than mere commercial value, and that alone would not compensate.

The next question is, was there any testimony tending to show that the plaintiff was entitled to any punitive damages in view of the testimony in the case and the repeated decisions of the Court in reference to the jury determining all issues of fact? We cannot believe that the very astute counsel of appellants are serious in these exceptions and the exceptions raising this question are overruled.

The last, and most serious, question raised is that his Honor erred in withdrawing from the consideration of the

jury the defense that the trees were cut down by an inde-
pendent contractor, for whose acts the defendant was
not responsible. He assigned the following reason for
so ruling: "In this cause the rights of the defendant,
whatsoever they are, accrued under a contract and that con-
tract is in evidence. Hence, as I view the law, the defend-
ant cannot escape any of his obligations under that contract
by setting up any violation of it or that by removing the
timber in any way, these acts were done by an independent
contractor." We think his Honor, Judge Copes, was right,
and the exceptions raising this question should be overruled.
Stack was the agent, in our opinion, of the defendant, and
it does not matter what was the terms of his contract with
the defendant. The plaintiff was not a party to it and in no
manner bound by it. Dr. Abbott conveyed certain timber,
or certain lands, and gave the party purchasing it, or his
assigns, the right to enter on these lands and cut and remove
the timber sold by him and no other timber than that which
he had sold. He had every reason to assume that he was
dealing with responsible parties and who in good faith would
carry out that contract. He had no idea that he was, by this
conveyance, giving the right to McLaurin to hawk it about
as if it was a chattel mortgage; the right for McLaurin, and
the persons he might convey to, the privilege for any irre-
sponsible person, tough, or one who was bankrupt in purse
and morals, or any other person, whomsoever, to enter on
his lands, depredate, trespass and injure his property, cut
down and remove timber that was not conveyed and which
was received and converted by the defendants, along with
the timber they had actually purchased, and appropriated by
them, and then coolly to be informed by the defendants that
they were not responsible, because the person he had con-
tracted with, and who entered the land by reason of the grant
to them by Dr. Abbott, was made by them an independent
contractor and in all probability for the very purpose of com-
mitting this wrong and relieving the defendants from any

liability committed by the person employed and sent in by them. In other words, the defendant says: "Yes, Stack went on the lands under permission from us. He would have been a bald trespasser to have gone there unless he contracted with us to go. He had no permission from the plaintiff. We sent him there and while we could have made him give bond to us to have saved us harmless in the event he negligently or wilfully performed his contract and injured either us or the plaintiff, we will not do this, but make an independent contract with him and let him be an independent contractor and go in there, licensed by us, empowered by us, under the terms of our contract with the Abbotts, and though he do wrong and outrage the rights of the plaintiff and wilfully invade them, he is not our agent, tool or 'stool pigeon,' but he is an 'independent contractor,' and whether he be responsible or irresponsible, whether he be financially able to respond to any damages or not for the damage he may do, it is not our affair. We will get the benefit of his services as long as it is our interest to approve and confirm his acts, and when he injuriously affects the interests of another, although sent by us as our representative, we will then repudiate him as an agent and call him an 'independent contractor.' "

There was no privity of contract between the Abbotts and Stack, and the testimony shows, by whatever name you call it, he entered the lands of plaintiff under a contract with the defendant, and he was their agent and they are bound by his acts, whether they thought they were dealing with him or not as an independent contractor as far as plaintiff is concerned. The defendant had the right to contract with any one to enter their lands and cut and carry off what they had purchased, but it was their duty to observe care in the selection of the person they sent in for this purpose; that he execute his duties in a lawful manner and not injuriously affect the interest of the plaintiff. Stack could only enter on lands here under authority derived from defendant. There is no

pretense that he had permission from plaintiff.   The defend-
ant could only authorize him to cut and remove timber as by
terms of their conveyance from Abbott.   It was their duty
to explain carefully what their rights were and instruct
Stack what he could do and how far he could go and what
part of the lands they were entitled to remove timber from,
and it was their duty to see that he did not exceed defend-
ant's rights in the premises.   They cannot repudiate his acts
and his agency when they were responsible for his presence
there.   Without defendant's permission and through defend-
ant's instrumentalities he could not be there, and they are
estopped from repudiating his agency and asserting he was
an independent contractor.

The case of *Rogers* v. *Florence Railroad,* 31 S. C. 375,
does not control this case, for the testimony here clearly
establishes agency and not independent contractor, and this
case should be controlled by *Rucker* v. *Smoke,* 37 S. C. 380,
16 S. E. 40.   Chief Justice McIver therein says: "As we
understand it, the proposition contended for by counsel for
appellant is, that a principal cannot be held liable for exem-
plary damages on account of a wrongful, wanton, or mali-
cious act done by his agent, within the scope of his agency,
unless such act be previously authorized or subsequently
ratified by the principal.   We do not think that this propo-
sition can be sustained either by reason or authority.   When
one person invests another with authority to act as his agent
for a specified purpose, all of the acts done by the agent in
pursuance, or within the scope of his agency, are, and should
be, regarded as really the acts of the principal.   If, there-
fore, the agent, in doing the act which he is deputed to do,
does it in such a manner as would render him liable for
exemplary damages, his principal is likewise liable, for the
act is really done by him.   To apply this doctrine to the
facts in the case under consideration: if Smoke was
appointed by Buyck as his agent to seize the mule covered by

mortgage, and he made the seizure which he was deputed to make in such a manner as would render him liable for exemplary damages, then Buyck would also be liable, for the reason that, both in law and common sense, Buyck must be regarded as having himself done the act complained of."

This view is, we think, fully sustained by authority. In *Story on Agency*, section 452, quoted with approval of Mr. Justice McGowan, in *Reynolds* v. *Witte,* 13 S. C., at page 18, we find the rule laid down as follows: "It is a general doctrine of law that, although the principal is not ordinarily liable (for he sometimes is) in a criminal suit for the acts or misdeeds of his agent, unless, indeed, he has authorized or co-operated in them, yet he is held liable to third persons, in a civil suit, for the frauds, deceits, concealments, misrepresentations, negligences, and other malfeasances, misfeasances, and omissions of duty of his agent, *in the course of his employment,* although the principal did not authorize, or justify, or participate in, or indeed, know of such misconduct, or even if he forbade the acts or disapproved of them. In all such cases the rule applies, *respondeat superior;* and it is founded on public policy and convenience, for in no other way could there be any safety to third persons in their dealings, either directly with the principal, or indirectly with him through the instrumentality of agents. In every such case the principal holds out his agent as competent and fit to be trusted, and thereby, in effect, he warrants his fidelity and good conduct in all matters within the scope of his agency. The rule is also well stated in 1 Am. & Eng. Enc. L., at page 410, in these words: "A principal is liable to third parties for whatever the agent does or says; whatever contracts, representations, or admissions he makes; whatever negligence he is guilty of, and whatever fraud or wrong he commits: provided, the agent acts within the scope of his apparent authority; and, provided, a liability would attach to the principal if he was in the place of the agent."

A majority of the Court concur in the opinion that the judgment of Circuit Court should be affirmed.

Judgment affirmed.

MESSRS. JUSTICES HYDRICK AND FRASER *concur in the result of this opinion.*

MR. JUSTICE HYDRICK.    I think the judgment of the Circuit Court should be affirmed.    There was no error in withdrawing from the consideration of the jury the defense that the tort complained of was done by an independent contractor, though I think the Court based its ruling upon the wrong ground; but that is immaterial.    The principle of independent contractor has no application in this case, because, under the law applicable to the undisputed evidence, defendant must be held to have ratified the alleged unauthorized act of Stack in cutting plaintiff's timber, by accepting the benefit of his act, after full knowledge of the facts.    There is no evidence that defendant has ever disaffirmed or repudiated the act of Stack, or offered to return to plaintiff the timber which he cut, or to pay her for it.    Upon what principle of law or justice can an employer retain the benefit of an unauthorized act of one employed by him and acting for him, and deny liability and force the injured party to look alone to the one who actually committed the tort for redress, though he may be financially irresponsible?    The defendant, knowing that Stack had cut plaintiff's timber, allowed him to ship it to its lumber mill, accepted it, and manufactured it into lumber of which it has received the benefit.    I know of no principle of law under which defendant can escape liability to plaintiff, under the facts stated.

"He that agreeth to a trespass after it is done is no trespasser, unless the trespass was done to his use or for his benefit, and then his agreement subsequent amounteth to a commandment; for in that case, *omnis ratihabitio retrotrahitur et mandate acquiparatur.*"    4 Inst. 317.    If defendant

10—93

had received the timber in ignorance of the facts, its reten-tion of it, and of the proceeds of it, after knowledge, was, in law, an implied ratification of Stack's act *ab initio*.   1 A. & E. Enc. L. (2d) 1190.

"The ratification of an unauthorized act is effective more frequently by implication from the acts and conduct of the person in whose behalf the act is done, inconsistent with any intention other than the adoption of such act, than by express words, the ratification being inferred from circumstances which the law considers equivalent to an express ratifica-tion."   1 A. & E. Enc. L. (2d) 1195.

"Implied ratification most frequently arises from the acceptance of benefits which are the result of the unauthor-ized acts, for where one, with full knowledge, receives profits or benefits he may be presumed to have ratified and accepted the conditions by which they are effected."   1 A. & E. Enc. L. 1196.

In the note on page 1197, 1 A. & E. Enc. L. (2d), it is said: "If a principal appropriates the proceeds of a tres-pass, ratification is properly implied.   *Exum* v. *Brister,* 35 Miss. 391; *Byne* v. *Hatcher,* 75 Ga. 289."

MR. JUSTICE FRASER.   I concur in the result with Mr. Justice Hydrick and Mr. Justice Watts.

The sale of the timber and timber rights was to Mr. McLaurin, his heirs and assigns.   I think that Judge Copes was right in holding that the defense of independent con-tractor was not permissible under the conveyance.   If Stack was on the land not as the agent or servant of McLaurin, his heirs or assigns, then he was a trespasser *ab initio* and under a contract that he would trespass upon the plaintiff's land for the benefit of the defendant.   The defendant received the benefit of the trespass and is responsible.   It is not claimed that Stack was the assignee of the timber or timber rights. It is true it is stated in the evidence that Stack was an inde-pendent contractor, but that was a conclusion of law and fact

and not a fact merely, and the statement was not evidence. The only statement of fact was as follows:

"What was that contract between the Sumter Company and Mr. Stack? Stating for a price they would pay him to log timber and he furnish the team and cut it and put on board cars."

Again: "What have you got to say about the Sumter Company going there and wilfully cutting it? I can not say the Sumter Company did. They agreed to give Stack so much a thousand to cut the timber and put on cars."

Again: "Did the Sumter Lumber Company have anything to do with the cutting? Nothing whatever."

The only statement of fact was that Stack had agreed to cut and load the timber on the cars at six dollars per thousand feet.

It is true it is said that they did not interfere with Stack in cutting the timber, but the contract must give them no power to interfere and there was no such evidence here. I do not think the evidence was sufficient to make Stack an independent contractor. The defendant was engaged in manufacturing lumber and bought the timber and rights to enter upon the land and cut and remove the timber from McLaurin. Now, the fact that they made a contract with Stack to cut the timber and load it on the cars at so much per thousand feet was insufficient to show that Stack was an independent contractor. A laborer is not an independent contractor who agrees to cut and pile wood at so much per cord, even though his employer does not, as matter of fact, interfere with the cutting. Even if it had the right to send an independent contractor (which I do not believe), it must show by the nature of the contract that the person who did what it had the right to do was an independent contractor and not its agent or servant.

It seems to me that if a person would shield himself from the consequences of the negligent conduct of a department of his business, under the plea of independent contractor, the

burden is upon him to prove all of the facts that make him, who would otherwise be a mere servant, an independent contractor.

I think Judge Copes was absolutely right in withdrawing from the jury the issue as to independent contractor. The statement that the company had no right to interfere in Stack's cutting and loading the timber was in argument and not in evidence, and when complaint was made that Stack was improperly doing his work, they undertook to stop him and control.

I think the judgment ought to be affirmed.