## SANFORD KEEDY *vs.* INHABITANTS OF AMHERST.

Hampshire.    September 21, 1915. — October 13, 1915.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Agency,* Existence of relation, Ratification.    *Municipal Corporations,* Officers and agents.    *Proximate Cause.*

In an action against a town by a boy three years and five months old for personal injuries caused by a motorcycle that had been left in the dooryard of the plaintiff's father falling over upon the plaintiff and breaking his leg, if it appears that the owner of the motorcycle, who was in the employ of a contractor, left the motorcycle on the land of the plaintiff's father while he went into the house to telephone to a teamster, who had been employed by the defendant to bring some manhole covers for a sewer that had been constructed in the street in front of the house, in order to hasten the delivery of the covers that the teamster already had agreed with the defendant to transport, and that the defendant afterwards paid the teamster his charge of $1 for carting the covers to the street in question, this evidence does not entitle the plaintiff to go to the jury, and a verdict must be ordered for the defendant; the payment of the teamster being no evidence of ratification of the telephoning by the owner of the motorcycle, and such telephoning, even if ratified, not being the cause of the trespass committed by such owner in leaving his motorcycle on the land of the plaintiff's father.

TORT against the town of Amherst for personal injuries sustained by the plaintiff on July 10, 1914, when he was three years and five months of age, by the falling upon him of a motorcycle, which was alleged to have been placed wrongfully and negligently upon the close of the plaintiff's father.    Writ dated September 22, 1914.

In the Superior Court the case was tried before *Aiken,* C. J. The facts which could have been found in favor of the plaintiff upon the evidence are stated in the opinion.

At the close of the evidence the defendant asked the Chief Justice to make thirteen rulings, which included the following:

"1.  There is no evidence of any neglect or want of care on the part of the defendant in this case and the plaintiff cannot recover.

"2.  Reidel, the employee of Tannatt, was not the agent or employee of the town of Amherst, and the plaintiff cannot recover."

"10.  If Reidel, in leaving his motorcycle on Mr. Keedy's lawn,

was a trespasser, it was not an act done by the town in construction and maintenance of sewers and the plaintiff cannot recover.

"11. There is no evidence that the defendant town ratified any acts of Reidel.

"12. If Reidel, in calling by telephone to Dickinson for the delivery of the manhole covers, was acting in the usual course of his employment as an assistant to Engineer Tannatt, the town did not thereby incur a liability as employer for his act in leaving his motorcycle on the lawn.

"13. There is no evidence that the town, when payment was made to Dickinson of $1 for drawing manhole covers, had any knowledge through its agents of any act of Reidel."

The Chief Justice refused to make these and the other rulings requested by the defendant, and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $2,000. The defendant alleged exceptions.

*J. C. Hammond,* for the defendant.

*F. L. Greene,* (*T. R. Hickey* with him,) for the plaintiff.

CROSBY, J. This is an action of tort for damages suffered by the plaintiff who, at the time of the injury, was three years and five months old, and the action is brought by his father as his next friend. The facts which the evidence tended to establish are briefly as follows.

The defendant, acting by its board of sewer commissioners, entered into an agreement with contractors for the construction by the latter of a sewer in Salem Street in Amherst. This work was practically completed on July 10, 1914, with the exception of placing covers upon the manholes. The plaintiff's father engaged the contractors to connect his premises with the sewer in the street. The chairman of the defendant's board of selectmen was also chairman of its board of sewer commissioners. The defendant employed one Tannatt "to engineer" the laying of the sewer at ten per cent of its cost. Tannatt also was employed by the town during this period "to engineer" the construction of other sewers in the town under the same agreement. In the performance of his work as engineer Tannatt employed one Reidel as an assistant. On July 10, 1914, Reidel, at the request and for the accommodation of one of the contractors, determined the grade and set some grade stakes upon the Keedy land. Later

he returned to Salem Street and left his motorcycle in Keedy's yard, near the sidewalk, and went into Keedy's house and telephoned to one Dickinson, a truckman, to send the manhole covers. Afterwards he went to the end of Salem Street to get his coat. While the motorcycle was so standing in the yard, it fell upon the plaintiff, breaking his leg, and the question is whether the defendant is liable to the plaintiff for the injury so received.

The plaintiff contends in his brief "that Reidel was during July, 1914, in the general employ of Tannatt, and not by any contract of hiring in the employ of or under pay from the town; but that in ordering the manhole covers and entering the Keedy premises for that purpose he was doing an act for the town and one beneficial to the town; that such action made him for that purpose a servant of the town since it accepted the benefit of his act; and that further such relationship was established by later ratification of his acts by the . . . selectmen."

It is plain that Reidel was not the servant or agent of the defendant. He was not employed or paid by it. It could not direct his work or order his discharge. Upon all the evidence he was an employee of Tannatt, and the defendant cannot be held responsible for his acts unless, as the plaintiff contends, the defendant ratified his act in ordering the manhole covers to be sent to Salem Street. It is undoubtedly true that the ratification of an unauthorized act may make the principal liable in an action of tort for an injury resulting from negligence of the agent in doing the act. *Perley* v. *Georgetown*, 7 Gray, 464. *Dempsey* v. *Chambers*, 154 Mass. 330, 334. *Nims* v. *Mount Hermon Boys' School*, 160 Mass. 177.

The plaintiff relies upon the fact that the defendant paid Dickinson his charge of $1 for cartage in taking the manhole covers to Salem Street. The terms of the agreement between the defendant and the contractors required the former to furnish and deliver the covers "on the ground as near the proposed manholes as convenient." There was evidence to show that Dickinson had been employed as a truckman to make such deliveries in connection with the building of this and other sewers under construction by the town at that time, and that previously to the receipt of the telephone from Reidel, Dickinson had been ordered to take the covers to Salem Street. It was a part of Dickinson's duty to

deliver the covers at the place where they were required, and for such deliveries he was entitled to be paid by the defendant independently of any act of Reidel. We think it is plain that the order of Reidel directing the manhole covers to be sent was the act of a volunteer, and the subsequent payment of Dickinson cannot be found to be a ratification of Reidel's act.

If the payment of Dickinson's charge for cartage could be considered as a ratification of Reidel's act in ordering the covers sent, it does not follow that the defendant would be liable for his negligence in allowing his motorcycle to fall upon the plaintiff. The independent act of Reidel in leaving his motorcycle upon the Keedy premises was a trespass and was no part of, nor did it result from ordering the covers to be delivered by Dickinson. The case is no stronger for the plaintiff than if a stranger had met Dickinson's teamster upon the highway with the manhole covers upon his wagon and had ordered him to hasten their delivery. The plaintiff relies on the case of *Dempsey* v. *Chambers,* 154 Mass. 330. In that case the person for whose negligence the defendant was held chargeable undertook to act as the defendant's servant in the delivery of coal to the plaintiff, a customer of the defendant. The negligence consisted in breaking a light of plate glass while delivering the coal. It appeared that afterwards the defendant presented a bill to the plaintiff for the coal. This court held that as the delivery of the coal was for the benefit of the defendant, it was so connected with the employment that the acts of the defendant amounted to a ratification of the employment and established the relation of master and servant from the beginning. The case at bar is clearly distinguishable. Reidel was at most a mere volunteer and did not profess to act as the servant of the defendant at any time.

The payment of Dickinson cannot be considered as a ratification of the remote act of Reidel in telephoning for the purpose of hastening the delivery of the manhole covers, although such payment would be evidence of the employment of Dickinson by the town. If, without any previous authority, Dickinson had carried the manhole covers to Salem Street, and while so doing somebody had been injured by his negligence in the performance of that work, and afterwards the town had paid him for this service, the town might be held liable for such negligence upon the

ground that it had ratified his employment and made him its servant from the beginning within the doctrine enunciated in *Dempsey* v. *Chambers.*

It is to be noted that there is no evidence to show that Reidel's act in telephoning Dickinson for the purpose of expediting the work which it was Dickinson's duty to perform was of any benefit or advantage to the defendant. See *Coomes* v. *Houghton,* 102 Mass. 211.

As the jury should have been instructed in accordance with the defendant's first request, that there was no evidence of negligence on the part of the defendant, we need not consider the other questions raised by the bill of exceptions. The exception to the refusal to give the first request must be sustained; and under the provisions of Sts. 1909, c. 236, and 1913, c. 716, judgment must be entered for the defendant.

*So ordered.*